IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE L. GORDON (01),<br><br>Defendant. | Case No. 15-40026-01-DDC |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant George L. Gordon's Motion to Suppress (Doc. 22). Mr. Gordon argues that the Court must suppress all evidence, including a holster and a gun, derived from a pat-down search because the search violated the Fourth Amendment. The government maintains that the search was constitutional for two reasons. First, the government argues that the officer conducting the pat-down search had reasonable suspicion that Mr. Gordon was armed and dangerous. Second, the government contends that the officer had probable cause to arrest Mr. Gordon, and thus the search was a valid one incident to a lawful arrest. For the reasons explained below, the Court denies Mr. Gordon's motion.

**I.     Factual Background**

The Court takes the following facts from the evidence presented at the August 10, 2015 motion hearing and, where undisputed, from the parties' briefs:

Mr. Gordon is charged with possession of a firearm in violation of 18 U.S.C. §§ 922(g), 924(a)(2). At about 4:45 p.m. on March 9, 2015 uniformed Topeka Police Officer Burger and his trainee, Recruit Officer Atchison, were on foot patrol on Huntoon Street between Lincoln Street and Buchanan Street in Topeka, Kansas. They were watching for traffic violations.

1

Topeka Officer Batman was located nearby in his patrol car. Officer Burger saw a white Cadillac travelling eastbound on Huntoon. Its driver wasn't wearing his seatbelt. The driver turned the Cadillac south into an alley east of Lincoln immediately before reaching Officer Burger's location. Officer Burger testified that he believed the Cadillac's driver turned into the alley to avoid police contact after seeing Officer Burger on Huntoon. Officer Burger notified Officer Batman of the seatbelt violation, prompting Officer Batman to follow the Cadillac down the alley and activate his emergency lights and sirens.

The driver, later identified as the defendant in this case, George Gordon, did not stop while in the alley. Instead, he kept driving and turned east onto 13th Street without signaling. Officer Batman testified that the Cadillac was speeding while in the alley, going approximately twice the legal limit. The Cadillac then travelled east for one block and turned north onto Buchanan—again without signaling. Officer Batman continued his pursuit. Finally, the Cadillac pulled over in a parking lot located on the southwest corner of Huntoon and Buchanan. Officer Batman stopped behind the Cadillac, got out of his patrol car, and approached with his gun at a low ready position. Officers Burger and Atchison joined the scene on foot. Officer Burger testified that Mr. Gordon was not wearing a seatbelt when he approached the Cadillac.

Officer Batman instructed Mr. Gordon to put his hands on the wheel and ordered the Cadillac's two passengers to raise their hands. Once all occupants had complied, Officer Batman holstered his gun. When asked for identification, Mr. Gordon could not provide a driver's license and, instead, gave Officer Batman probation release papers. Officer Batman then asked Mr. Gordon to step out of the Cadillac. When Officer Batman took Mr. Gordon toward his patrol car to obtain more identifying information, Mr. Gordon acted nervous and kept glancing back toward the Cadillac and the passengers in that car.

When they reached the patrol car, Officer Batman informed Mr. Gordon that he was going to conduct a pat-down search to make sure he wasn't carrying a weapon. When he did so, Officer Batman found a gun holster attached to Mr. Gordon's belt. It was empty. Officer Batman handcuffed Mr. Gordon and informed Officers Burger and Atchison that there might be a gun in the Cadillac or with one of its passengers. The officers called for backup officers and then searched the car and the two passengers. When that search did not locate a gun, officers began searching the path the Cadillac had travelled. About 15 to 30 minutes later, an officer located a gun on the west side of Buchanan between 13th Street and Throop. The gun was sitting about five feet off the roadway on top of a pile of leaves, and in an area with considerable foot traffic. This put the gun on the driver's side of the path that the Cadillac had travelled. The officers arrested Mr. Gordon.

**II.     Analysis**

Mr. Gordon argues that the Court must suppress the holster, the gun, and all other evidence derived from the pat-down search because it violated his Fourth Amendment right against unreasonable search and seizure. According to the government, the pat-down search was constitutional for two reasons: (1) Officer Batman had reasonable suspicion to believe that Mr. Gordon was armed and dangerous; and (2) Officer Batman conducted a valid search incident to arrest because he had probable cause to arrest Mr. Gordon for fleeing or attempting to elude a police officer.

The Fourth Amendment to our Constitution protects persons against unreasonable searches and seizures. U.S. Const. amend. IV. Evidence derived from a search or seizure must comport with this Forth Amendment protection to be admissible. *Terry v. Ohio*, 392 U.S. 1, 12–13 (1968). An automobile stop is a seizure under the Fourth Amendment and therefore must be reasonable under the circumstances. *See Whren v. United States*, 517 U.S. 806, 810 (1996). Here, no

dispute exists: the officers' decision to stop Mr. Gordon was reasonable because probable cause existed to suspect that a traffic violation—failure to wear a seatbelt—had occurred. *See id.* But, when Officer Batman conducted a pat-down of Mr. Gordon's clothes, this amounted to a seizure of Mr. Gordon's person and a search within the scope of the Fourth Amendment. *See Terry*, 392 U.S. at 16–17. Mr. Gordon challenges this search as unconstitutional.

Generally, a warrant based on probable cause is required before authorities can conduct a valid search or seizure. U.S. Const. amend. IV; *Terry*, 392 U.S. at 20. But, there are exceptions to the warrant requirement, and two of them are relevant here. First, under certain circumstances where reasonable suspicion exits, a pat-down search for weapons is permissible without a warrant or probable cause. *See Terry*, 392 U.S. at 24. Second, the Fourth Amendment permits a warrantless search incident to a lawful arrest. *See United States v. Robinson*, 414 U.S. 218, 224 (1973); *United States v. McKissick*, 204 F. 3d 1282, 1296 (10th Cir. 2000). The Court addresses each exception as it applies to the pat-down search of Mr. Gordon, in turn, below.

### A. Reasonable Suspicion Exception to the Warrant Requirement

Our cases recognize the importance of officer safety. For instance, they allow an officer to take reasonable steps to make sure a suspect does not possess a weapon he could use against the officer. *Terry*, 392 U.S. at 24. In *Terry*, the Supreme Court held that an officer may conduct a reasonable pat-down for weapons while investigating an individual for suspicious behavior if the officer has reasonable suspicion that the individual is armed and dangerous to the officer or others. 392 U.S. at 19, 24, 27. Such a search is designed to allow the officer to pursue his investigation without fearing violence. *Adams v. Williams*, 407 U.S. 143, 146 (1972). Absent probable cause, the search "must be limited to that which is necessary for the discovery of weapons . . . ." *Terry*, 392 U.S. at 25–26.

Here, Officer Batman testified that he conducted a pat-down of Mr. Gordon to ensure that he possessed no weapons that could threaten officer safety. He patted down the outside of Mr. Gordon's clothing, felt a large object on Mr. Gordon's belt, and discovered a gun holster. This was the type of limited search contemplated by *Terry*. Thus, the Court must determine whether reasonable suspicion existed under the circumstances to justify Officer Batman's pat-down of Mr. Gordon.

The test for reasonable suspicion is an objective one asking "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27. Traffic stops always pose a risk to officer safety because of their confrontational nature, so officers have discretion to remove persons from a car for officer safety. *See United States v. Rice*, 483 F.3d 1079, 1083–84 (10th Cir. 2007). But, to conduct a pat-down, an officer must have an objective, fact-based reasonable suspicion to believe that the person may be armed and dangerous. *See id.* at 1084; *see also United States v. Brown*, 188 F.3d 860, 864 (7th Cir. 1999). Whether an officer had the requisite reasonable suspicion to conduct a pat-down for weapons is judged under the totality of the circumstances test. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "[T]he police officer must be able to point to specific and articulable facts which . . . reasonably warrant [the search]." *Terry*, 392 U.S. at 21. But, the reasonable suspicion required to justify a pat-down search does not need to reach the level of objective justification required for probable cause. *Rice*, 483 F.3d at 1083.

The hearing testimony of both Officer Batman and Officer Burger identified several reasons for Officer Batman's pat-down of Mr. Gordon. Those reasons were: (1) Mr. Gordon's initial attempt to flee and elude Officer Batman, followed by a sudden decision to allow officer contact; (2) Mr. Gordon's failure to produce identification; (3) Mr. Gordon's targeted glances back toward the Cadillac; (4) the number of passengers and number of officers present; (5) the high crime area where

the stop occurred; and (6) Mr. Gordon's nervous behavior.  The Court discusses each reason individually and then under the totality of the circumstances test to determine if Officer Batman reasonably suspected that Mr. Gordon may have been armed and dangerous.

1. **Reason 1:  Mr. Gordon's initial attempt to flee and elude Officer Batman followed by a sudden decision to allow officer contact**

As part of the reasonable suspicion inquiry, officers are permitted to draw reasonable inferences from their training and experiences.  *Arvizu*, 534 U.S. at 273 (2002).  *See also*, *United States v. McRae*, 81 F.3d 1528 (10th Cir. 1996) ("[The Court] defer[s] to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions.") (quoting *United States v. Martinez-Cigarroa*, 44 F.3d 908, 912 (10th Cir. 1995) (Baldock, J., concurring)).  And the Court should give due weight to inferences drawn by local police based on their expertise.  *See Ornelas v. United States*, 517 U.S. 690, 690 (1996).  "Flight can create reasonable suspicion that the *person fleeing* is involved in criminal activity."  *United States v. De La Cruz*, 703 F.3d 1193, 1198 (10th Cir. 2013) (emphasis in original); *see also Illinois v. Wardlow,* 528 U.S. 119, 124 (2000) (noting that unprovoked flight and evasive behavior after noticing the police is a relevant factor to determine whether police reasonably suspected that criminal activity is afoot).

Officer Batman and Officer Burger both testified that they were concerned about the use of weapons against them.  Officer Batman testified he was concerned that Mr. Gordon or one of the passengers might attack because the Cadillac first tried to elude the police and then came to a sudden stop.  Officer Burger testified that he thought the Cadillac turned into the alley to avoid the police.  He also described how police officers watch for pre-attack indicators, including a person who refuses to stop immediately for the police and instead chooses the location to stop on their own terms.  These situations give the person time either to hide contraband or form a plan to attack the police.

Officer Batman initially approached the Cadillac with his gun at the low-ready position because he was concerned that the occupants of the Cadillac might be armed and dangerous.  But,

6

Officer Batman holstered his weapon when Mr. Gordon and his passengers cooperated. This cooperation did not deprive Officer Batman of grounds for reasonable suspicion that Mr. Gordon may be armed and dangerous. An officer's subjective beliefs and intentions are irrelevant to the reasonable suspicion determination, which is determined under an objective standard. *De La Cruz*, 703 F.3d at 1196.

Here, the situation objectively justified reasonable suspicion that Mr. Gordon was armed and dangerous. Mr. Gordon was uncooperative when he refused to stop after the officer activated his patrol car's lights and sirens. These circumstances justify a reasonably prudent officer to believe that his safety might be in danger. And as Officer Batman explained when he testified, Mr. Gordon renewed his safety concerns when he failed to produce identification and kept glancing back toward the Cadillac. *See* discussion of Reasons 2 and 3, below.

While flight does not necessarily mean that the driver is armed and dangerous, this wrongdoing suggests an objective basis for increased awareness for safety. Here, the officers inferred that they believed Mr. Gordon might be armed and dangerous because, in part, he tried to flee and then stopped suddenly. The Court gives due weight to the officers' training and experience and finds their suspicion that Mr. Gordon may have been armed and dangerous favors a finding that the officer's belief was objectively reasonable. *See United States v. Santos*, 403 F.3d 1120, 1128, 1134 (10th Cir. 2005) (giving a trooper's assessment of a traffic stop encounter the "due weight" to which it is entitled because the officer was present at the encounter and had the training and experience to evaluate the situation).

2. **Reasons 2 and 3: Mr. Gordon's failure to produce identification and targeted glances back toward the Cadillac**

Officer Batman's concern for his safety still existed when he conducted the pat-down. He testified that his concerns increased when Mr. Gordon failed to provide identification and kept glancing back at the Cadillac. Mr. Gordon could not provide the identifying information that Officer

Batman had requested. While refusing to answer a police officer's questions, by itself, will not provide a basis for a reasonable suspicion finding, it may contribute to the totality of circumstances. *See Santos*, 403 F.3d at 1132. In addition, Officer Batman was concerned that Mr. Gordon may be looking at the passengers to signal them for help. These reasons favor a finding that the officer's suspicion was reasonable. *See Brown*, 188 F.3d at 865 ("The totality of the circumstances also included [defendant]'s repeatedly glancing back towards the car in question while its occupants rolled down the tinted windows.").

### 3. Reasons 4 and 5: The number of passengers and officers present and the high crime area of the stop

When the police made contact with the Cadillac, Officers Batman, Burger, and Atchison were present on the scene. The Cadillac contained Mr. Gordon and two passengers. The government argues that a pat-down for officer safety was necessary because there were three occupants in the Cadillac and only two officers and one officer-in-training present. The government contends that this was especially appropriate because the traffic stop occurred in a high crime area.

Presence in a high-crime area alone is not enough to support a reasonable suspicion that an individual is armed, but the Court may consider it as part of the totality of the circumstances. *See id.*; *Wardlow*, 528 U.S. at 124; *United States v. McKoy*, 428 F.3d 38, 40 (1st Cir. 2005). Both Officer Batman and Officer Burger testified that when they work in the area where the stop occurred they have a heightened awareness for officer safety because it is well-known for crime. The Court does not afford these reasons significant weight, however, in its reasonable suspicion analysis. It appears that many backup officers were in the area when the stop occurred and responded quickly when summoned. Also, what constitutes a "high crime" area is defined loosely, and the government has not provided sufficient information for the Court to make such a

determination on the record presented here.  *See McKoy*, 428 F.3d at 40 (finding that where sole occupant of car was approached by two officers in broad daylight for a traffic violation, the criminal history of the neighborhood "lends only weak support to the officers' perception that McKoy was armed and dangerous.").

    4.  **Reason 6:  Mr. Gordon appeared nervous**

Officer Batman testified that Mr. Gordon appeared nervous when he questioned him.  While nervousness alone will not justify a pat-down, an officer properly may consider it as part of the totality of the circumstances.  *Brown*, 188 F.3d at 865.  But, nervousness has a minimal effect on a court's reasonable suspicion analysis.  *See United States v. Garcia*, 751 F.3d 1139, 1146–47 (10th Cir. 2014).  As *Santos* explains, many people are nervous when confronted by the police, so nervousness is of limited significance unless it is unusually severe.  403 F.3d at 1127–28.  The government presented no evidence that Mr. Gordon was unusually nervous during the stop.  The Court thus affords his nervousness little weight in its reasonable suspicion analysis.

    5.  **Totality of the Circumstances**

In its totality of the circumstances analysis, the Court weighs the evidence available "as understood by those versed in the field of law enforcement."  *United States v. Cortez*, 449 U.S. 411, 418 (1981).  The totality of the circumstances includes an officer's knowledge, observations, inferences based on training and experience, and the circumstances in which the officer is working.  *See Garcia,* 751 F.3d at 1143, 1147.  The reasons identified by the government and the two testifying officers are relevant to the reasonable suspicion analysis, even if each one, by itself, would not justify a conclusion of reasonable suspicion.  *Id.*

Here, Officer Batman's suspicion that Mr. Gordon may have been armed and dangerous, informed by his experience and training, was not unreasonable.  In his testimony, Officer Batman pointed to specific facts from which he inferred that Mr. Gordon may be armed and dangerous.

9

Officer Batman explained that he decided to conduct the pat-down because: (1) Mr. Gordon did not stop the Cadillac immediately after the officer activated his patrol car's lights and sirens; (2) Mr. Gordon tried to elude the police by speeding and making quick turns followed by a sudden decision to allow officer contact; (3) Mr. Gordon failed to produce identification; and (4) Mr. Gordon acted nervous and made targeted glances toward the Cadillac and its passengers while the officer tried to get information from him. These facts provided a basis for reasonable suspicion to warrant a reasonably prudent officer to conduct a routine pat-down search for weapons to protect his safety and the safety of others. The Court thus concludes that Officer Batman's search of Mr. Gordon satisfied the reasonable suspicion exception to the warrant requirement.

### B. Search Incident to Arrest Exception to the Warrant Requirement

A search incident to a lawful arrest is also an exception to the Fourth Amendment's warrant requirement. *Robinson*, 414 U.S. at 224. The purpose of a search incident to arrest is to remove any weapons from the arrestee to ensure officer safety, and to prevent the arrestee from concealing or destroying evidence he may possess. *Id.* at 226. Unlike a *Terry* frisk for weapons, a search incident to arrest can "involve a relatively extensive exploration of the person." *Id.* at 227. Thus, when conducting a search incident to arrest officers are not limited to a search for weapons, but also can search for evidence of other crimes. *McKissick*, 204 F.3d at 1296.

Based on the facts presented here, the Court holds that Officer Batman's search of Mr. Gordon was a valid search incident to a lawful arrest. As discussed below, the fact that Mr. Gordon's arrest did not occur until after the search of his person is of no consequence. "A warrantless search preceding an arrest is a legitimate 'search incident to arrest' as long as (1) a legitimate basis for the arrest existed before the search and (2) the arrest followed shortly after the search." *United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998). Both prongs of this two-part inquiry are met in Mr. Gordon's case.

### 1. A legitimate basis for Mr. Gordon's arrest existed before the search.

To make a legitimate arrest, an officer must have probable cause. *See id.* "Probable cause to arrest exists when an officer has learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe than an offense has been or is being committed by the person arrested." *Id.* The Circuit's decision in *United States v. Lugo* illustrates this rule. 170 F.3d 996 (10th Cir. 1999).

In *Lugo*, an officer stopped a car for speeding and discovered the driver was operating the car without a driver's license. *Id.* at 1003. The officer warned the driver, the defendant, that he would be arrested if he could not produce identification. *Id.* at 1000. Under Utah law, the officer lawfully could arrest the defendant for the misdemeanor offenses that had led the officer to stop the defendant's car. *Id.* at 1003. The officer conducted a pat-down search and, after smelling a strange odor and noticing alterations in the car floor, he searched the car. *Id.* at 1000. When the officer found drugs, he arrested the defendant. *Id.* The district court found (and the Tenth Circuit affirmed) that the officer had "probable cause and a legitimate basis to arrest" the defendant before the pat-down and car search based on the Utah misdemeanor offenses. *See id.* at 1003.

Here, probable cause to arrest Mr. Gordon existed by the time Mr. Gordon pulled his Cadillac over in the parking lot. Under Kansas law, fleeing or attempting to elude a pursuing police car is a misdemeanor. K.S.A. § 8–1568(a), (c). A police officer who sees someone commit this misdemeanor can arrest the individual without first obtaining a warrant. *See* K.S.A. §§ 22–2401(d) (authorizing warrantless arrest for any crime seen by an officer except a traffic, cigarette, or tobacco infraction), 21–5102(b) (defining traffic infraction as "a violation of any of the statutory provisions listed in subsection (c) of K.S.A. 8-2118"), 8–2118(c) (not listing § 8–1568 as a traffic infraction). Mr. Gordon failed to yield to the patrol car after Officer Batman activated his car's lights and sirens. Mr. Gordon continued to speed down the alley and made two more turns without signaling or yielding before halting his Cadillac. Officer Batman testified that the left turns onto 13th Street and

then onto Buchanan were "quick and deliberate" turns of the kind a driver makes when eluding police pursuit. Mr. Gordon drove almost three blocks before pulling over in the parking lot, and by then, Officer Batman had probable cause to arrest Mr. Gordon. *See Wright v. City of St. Francis, Kan.*, 95 F. App'x 915, 921, 930–31 (10th Cir. 2004) (finding probable cause to arrest for fleeing or attempting to elude a police officer in violation of K.S.A. § 8-1568 when suspect saw the police lights and heard the sirens but drove several blocks before stopping). Thus, as in *Lugo*, probable cause and a legitimate basis to arrest Mr. Gordon existed before Officer Batman's pat-down because the officer had seen Mr. Gordon violate K.S.A § 8–1568. Kansas law authorized Officer Batman to arrest Mr. Gordon for this misdemeanor offense. *See* K.S.A. §§ 8–1568, 8–2118(c), 21–5102(b), 22–2401(d).

While Officer Batman told Mr. Gordon that he was not under arrest during the pat-down search, this subjective statement about the officer's state of mind is irrelevant to the probable cause and legitimate basis to arrest determination. To determine if probable case exists, the situation is viewed objectively. *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014) (citing *Whren*, 517 U.S. at 812–13). An officer's subjective mindset does not invalidate a search if the search is objectively supported by probable cause. *Id.* When the Court applies the facts presented here from an objective standpoint, probable cause to arrest existed when Officer Batman conducted the pat-down. Mr. Gordon had attempted to flee or elude a pursuing police car after the lights and sirens signaled him to stop. At that point Officer Batman had observed circumstances that would lead a reasonably prudent officer to believe that Mr. Gordon had committed a misdemeanor offense. *See Anchondo*, 156 F.3d at 1045. "Whether or not the officer intended to actually arrest the defendant at the time of the search is immaterial to this two-part inquiry." *Id.* Thus, Officer Batman had a legitimate basis to arrest Mr. Gordon before the search.

### 2. Mr. Gordon's arrest followed shortly after the search.

To constitute a valid search incident to arrest, a pre-arrest search must be followed shortly thereafter by an arrest. *Anchondo*, 156 F.3d at 1045. As discussed above, *Lugo* concluded that the officer had a legitimate basis to arrest before the search based on misdemeanor violations of state law. *Lugo*, 170 F.3d at 1003. *Lugo* also examined whether the drug arrest in that case was too remote from the search. *See id.* Initially, the officer had warned the *Lugo* defendant that he would be arrested if he could not produce identification. *Id.* at 1000. Then, the officer conducted the pat-down search and began searching the car. *Id.* When he smelled a strange odor and found a compartment under the carpet, he called for backup. *Id.* When backup arrived, the carpet was pulled back and packages later determined to contain cocaine were found. *Id.* "At this point, [the defendant] was placed under arrest for possession of a controlled substance." *Id.* While the *Lugo* record was unclear about exactly when the defendant formally was placed under arrest, he was arrested at the very latest "shortly after the search was completed." *Id.* at 1003. The Court found that even if the search began before the arrest, the actual arrest took place shortly after the search was finished. The cocaine thus was discovered as part of a valid search incident to arrest. *See id.*

Like the facts presented in *Lugo*, the arrest of Mr. Gordon occurred shortly after the search was completed. Officer Batman had a legitimate basis to arrest Mr. Gordon before the search began because Mr. Gordon had committed a Kansas misdemeanor. When the pat-down search uncovered a gun holster, other officers were called to the scene to search the area for a gun. The gun was located within 30 minutes. Once it was discovered, Mr. Gordon was placed under arrest.

Under the two prong inquiry set forth in *Anchondo*, a legitimate basis existed for Mr. Gordon's arrest before the pat-down search, and an arrest followed shortly after the search. Therefore, the Court holds that Officer Batman's search of Mr. Gordon, the discovery of the holster, and the discovery of the gun resulted from lawful search incident to an arrest.

### III. Conclusion

The search of Mr. Gordon was reasonable under the Fourth Amendment for two reasons. First, Officer Batman had developed an objectively reasonable suspicion to believe that Mr. Gordon might be armed and dangerous. This belief justified a pat-down search for weapons. Second, the holster was discovered during a valid search incident to arrest. The Court thus denies Mr. Gordon's Motion to Suppress.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant George L. Gordon's Motion to Suppress (Doc. 22) is denied.

**IT IS SO ORDERED.**

**Dated this 8th day of September, 2015, at Topeka, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**